IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES COTTON, ) | |
| ) | Case No.: 2:11-cv-00969-CRE |
| Plaintiff, ) | Magistrate Judge Cynthia Reed Eddy |
| ) | |
| v. ) | Jury Trial Demanded |
| ) | |
| ALLEGHENY COUNTY and ) | |
| ALLEGHENY CORRECTIONAL ) | |
| HEALTH SERVICES, INC. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S CONCISE STATEMENT IN RESPONSE TO
DEFENDANT ALLEGHENY COUNTY'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule of Civil Procedure 56.C.1, plaintiff James Cotton ("Cotton"), by and through his undersigned counsel, hereby files his concise counter-statement of facts in response to the Concise Statement in Support of Motion for Summary Judgment (the "County's Statement") filed by defendant Allegheny County (the "County"), Dkt. # 86.

Section I responds by corresponding paragraph number to the facts alleged in the County's Statement. Section II sets forth additional undisputed material facts.

**I.      RESPONSES TO FACTS ALLEGED BY THE COUNTY**

1.      **Exhibit N,** *Deposition of Sheriff Deputy Gim Yee***,** James Wesley Cotton (hereafter "Plaintiff") was admitted to Allegheny County Jail on July 16, 2008. **Exhibit A, Allegheny County Inmate Commitment Summary Report, A0000044 – 000046**. Plaintiff was sentenced to serve 9 – 18 months. **Id, A0000038**.

**Cotton admits in part and denies in part that these facts are undisputed and material. Cotton does not know for what fact Exhibit N was cited and therefore denies that such a fact, if any, is undisputed. Cotton takes no position as to whether such a fact is material. Cotton admits that the other facts are both undisputed and material.**

2. Allegheny Correctional Health Services ("ACHS") provides medical care to inmates at Allegheny County Jail.  **Exhibit B,** ***ACHS-Allegheny County Contract*, A0000117 – 000125**.

**Cotton admits that these facts are undisputed and material.**

3. Allegheny County and the Allegheny County Jail are not involved in the medical decision-making at the Jail.  All medical decision-making is done by ACHS.  **Exhibit C,** *Affidavit Deputy Warden William Emerick*.

**Cotton admits that these facts are undisputed but denies that they are material.**

4. Plaintiff had a long history of drug abuse that included the use of cocaine and heroin as well as a 45 year history of cigarette smoking at the time he was admitted to Allegheny County Jail.  **Exhibit D,** *Mendel Expert Report* **at 6**.

**Cotton admits that these facts are undisputed but denies that they are material.**

5. On February 10, 2009, ACHS drew blood from Plaintiff and submitted it to Quest Diagnostics.  Quest's laboratory report, dated February 11, 2009, indicated an elevated blood glucose level.  **ECF #68, 4th A. Comp., Ex. A**.

**Cotton admits that these facts are undisputed and material.**

6. The elevated blood glucose level of Plaintiff is considered pre-diabetic, does not amount to a diagnosis of diabetes, and does not warrant medical intervention.  **Exhibit D,** *Mendel Expert Report* **at 3, 5**.

**Cotton admits in part and denies in part that these facts are undisputed and material.  Cotton admits that the facts that the elevated blood glucose level of Plaintiff is considered pre-diabetic and that the elevated blood glucose level of Plaintiff does not amount to a diagnosis of diabetes are undisputed and material.  Cotton denies that the other facts alleged by the County in paragraph 6 are undisputed.  It is a legal question whether Cotton's elevated blood glucose level warranted medical intervention.  Cotton admits that this fact is material.  This dispute of material fact precludes summary judgment.**

7. More than six months later, on August 13, 2009, Plaintiff requested medical care for dry mouth, blurred vision, muscle spasms, and balance issues. **ECF #68, 4th A. Comp., Ex. B**.

**Cotton admits that these facts are undisputed and material.**

8. That same day a treating ACHS physician attributed Plaintiffs dry mouth to the side effects of a medication and ordered that Plaintiff be weaned off that medication. **ECF #68, 4th A. Comp., Ex. B**. On August 17, 2009, another physician also noted the same medication was likely causing Plaintiffs dry mouth. **ECF #68, 4th A. Comp., Ex. C**.

**Cotton admits that these facts are undisputed and material.**

9. Plaintiff's complaints were handled in a manner that is consistent with applicable standards of care. **Exhibit D,** *Mendel Expert Report* **at 5**.

**These allegations are conclusions of law and require no response. Furthermore, the "applicable standards of care" are not defined by the County. To the extent a response is required, Cotton denies that the facts alleged by the County in paragraph 9 are undisputed but admits that they are material.**

10. On the morning of August 18, 2009, ACHS responded to a medical emergency at Plaintiffs cell, and after determining that his condition was severe, decided to transport Plaintiff to UPMC Mercy hospital for emergency care.

**Cotton admits that these facts are undisputed and material.**

11. Plaintiff was picked up by EMS around 7:10 a.m., **Exhibit E,** *Medical Records of Plaintiff, Mercy Hospital, produced by Plaintiff*, **JCotton000074 (EMS Form)**, and was escorted by Correctional Officers Bytner and Howard. **Exhibit F,** *Allegheny County Transportation of Inmates Log, 8/18/2009*, **A0000001** (dispatch form for hospital transport).

**Cotton admits that these facts are undisputed and material.**

12. Allegheny County Jail has a written policy directed towards the transportation of inmates by Allegheny County Jail Employees. **Exhibit G,** *Allegheny County Jail Policy #17, Transportation of Inmates*, **A0000019 – 000027**. The policy also addresses the guarding of inmates who are hospitalized. **Id, A0000020 – 000024 (Hospital Procedures)**.

**Cotton admits that these facts are undisputed and material.**

13. It is the policy of Allegheny County Jail to use restraints on inmates during transportation, including handcuffs, belts and leg irons. **Id, A0000020**.

**Cotton admits that these facts are undisputed and material.**

14.     It is further the policy of Allegheny County Jail to double lock handcuffs and leg irons to prevent them from tightening.  **Id, A0000020**.

**Cotton admits that these facts are undisputed and material.**

15.     Correctional Officer Bytner stated he would have taken charge in putting restraints on Plaintiff because he was the more senior Correctional Officer assigned to transport Plaintiff.  **Exhibit H,** *Deposition of Allegheny County Sgt. Robert Bytner*, **Depo Bytner 3 1:19**.

**Cotton admits that these facts are undisputed and material.**

16.     Correctional Officer Bytner had seen the written policy and was familiar with it. **Exhibit H,** *Deposition of Allegheny County Sgt. Robert Bytner*, **Depo Bytner 42:3**. Correctional Officer Bytner received training on the correct use of restraints in accordance with this policy from Allegheny County Jail, continually received updates to that training, and used restraints in accordance with that training habitually.  ***Exhibit H, Deposition of Allegheny County Sgt. Robert Bytner*, Depo Bytner 34:15, 72:11**.  Correctional Officer Bytner received training on how to recognize whether handcuffs are too loose or too tight.  **Exhibit H,** *Deposition of Allegheny County Sgt. Robert Bytner*, **Depo Bytner 34:7**.

**Cotton admits that these facts are undisputed and material.**

17.     Correctional Officer Bytner stated the procedure for applying handcuffs to an inmate involves placing the handcuffs on one at a time, checking the tightness of each handcuff, double locking the handcuffs, making sure the double lock mechanism was working, and checking the tightness again.  **Exhibit H,** *Deposition of Allegheny County Sgt. Robert Bytner*, **Depo Bytner 32:16, 72:6**.  The double lock mechanism prevents the handcuff from getting tighter.  **Exhibit H,** *Deposition of Allegheny County Sgt. Robert Bytner*, **Depo Bytner 77:3**.

**Cotton admits that these are undisputed and material.**

18.     Correctional Officer Bytner stated this procedure was followed whether the inmate was conscious or unconscious for security reasons, **Exhibit H,** *Deposition of Allegheny County Sgt. Robert Bytner*, **Depo Bytner 63:10**, and that inmates who were thought to be unconscious had turned out to be security threats multiple times.  **Exhibit H,** *Deposition of Allegheny County Sgt. Robert Bytner*, **Depo Bytner 78:17**.

**Cotton admits that these facts are undisputed and material.**

19.     During transport, EMS attempted to place an IV in Plaintiffs left arm but was not successful.  EMS noted that there was poor peripheral access due to Plaintiffs past IV drug abuse. **Exhibit E,** *Medical Records of Plaintiff, Mercy Hospital, produced by Plaintiff,* **JCotton000074 (EMS Form)**.  It was also noted that all Plaintiffs extremities were normal with

pulse, motor, and sensation and no edema nor tenderness.  **Exhibit E,** *Medical Records of Plaintiff, Mercy Hospital, produced by Plaintiff*, **JCotton000073 (EMS Form)**.

**Cotton admits that these facts are undisputed and material.**

20.     Dr. Michael Lynch treated Plaintiff in the Emergency Department upon arriving at UPMC Mercy.  During this initial care a right wrist IV was attempted.  Dr. Lynch noted that the right wrist IV was actually placed into an artery and that one amp of bicarbonate was pushed through prior to the recognition of the arterial IV.  **Exhibit I,** *Medical Records of Plaintiff, Mercy Hospital, Produced by ACHS, 8/18/09 Admission*, **ACHS Docs Pg 19 of 435 (Mercy Hospital records – Emergency Department Evaluation)**.

**Cotton admits that these facts are undisputed and material.**

21.     Dr. Lynch made no mention of handcuffs but did note that all Plaintiffs extremities were normal without tenderness or edema.  **Exhibit I,** *Medical Records of Plaintiff, Mercy Hospital, Produced by ACHS, 8/18/09 Admission*, **ACHS Docs 18-21 of 435 (Mercy Hospital records – Emergency Department Evaluation)**.

**Cotton admits that these facts are undisputed and material.**

22.     Plaintiff was diagnosed as having Diabetes Mellitus and responded well to treatment.  (ECF #68, 4th A. Comp., Ex. D); **Exhibit D,** *Mendel Expert Report* **at 5**.

**Cotton admits that these facts are undisputed and material.**

23.     Correctional Officers Bytner and Howard continued to guard Plaintiff upon reaching the hospital.  **Exhibit F,** *Allegheny County Transportation of Inmates Log, 8/18/2009*, **AC000001** (dispatch form for hospital transport).

**Cotton admits that these facts are undisputed and material.**

24.     It is the policy of Allegheny County Jail that leg shackles should be used at a minimum by Correctional Officers when guarding an inmate in the hospital.  Any other restraints shall be applied at the discretion of the guarding Officers.  **Exhibit G,** *Allegheny County Jail Policy #17, Transportation of Inmates*, **AC000023**.  Handcuffs are only required if leg irons cannot be used.  **Exhibit G,** *Allegheny County Jail Policy #17, Transportation of Inmates*, **AC000024**.  Handcuffs and leg irons must be double locked when in use to prevent the cuff or leg iron from tightening.  **Exhibit G,** *Allegheny County Jail Policy #17, Transportation of Inmates*, **AC000020.**

**Cotton admits that these facts are undisputed and material.**

25.     Correctional Officer Bytner stated he normally uses both shackles and handcuffs to secure an inmate in the hospital, and that normally one wrist will be unsecure while the other is secured to the gurney.  **Exhibit H,** *Deposition of Allegheny County Sgt. Robert Bytner*, **Depo**

**Bytner 74:6**.  Officer Bytner prefers to take this security precaution so that the inmate cannot reach for something that he could use as a weapon, such as an IV needle.  **Exhibit H,** *Deposition of Allegheny County Sgt. Robert Bytner*, **Depo Bytner 75:16**.

**Cotton admits that these facts are undisputed and material.**

26.    Allegheny County Sheriff Deputy Larry Santacasa relieved Correctional Officers Bytner and Howard from guarding Plaintiff sometime between 4:00 p.m. (when it was noted a sheriff deputy was assigned to relieve them) and 5:40 p.m. (when Officers Bytner and Howard returned to the jail) on the 18th.  **Exhibit F,** *Allegheny County Transportation of Inmates Log, 8/18/2009*, **AC000001** (dispatch form for hospital transport); **Exhibit J, Sheriff Deputy Schedule for August 18-19, 2009**.

**Cotton admits that these facts are undisputed and material.**

27.    Allegheny County does not set the policies, practices or customs of the Allegheny County Sheriff.  **Exhibit K,** *Affidavit of Sheriff William Mullen*.  **See also ECF 70,** *Allegheny County Answer to π's 4th Amended Complaint*.

**These allegations are conclusions of law and require no response.  To the extent a response is required, Cotton denies that the facts alleged by the County in paragraph 27 are undisputed and material.  By way of further explanation, Cotton does not seek to hold the County liable for any actions undertaken pursuant to the policies, practices, or customs of the Allegheny County Sheriff.**

28.    The Sheriff has a written policy addressing guarding inmates in the hospital.  **Exhibit L,** *Sheriff Procedural Order 101-19, Prisoner Transportation Rules*.

**Cotton admits that these facts are undisputed and material.**

29.    It is the policy, practice and custom of the Allegheny County Sheriff to use leg shackles on an inmate it is guarding in the hospital.  Handcuffs are only necessary if leg shackles cannot be used.  **Exhibit L,** *Sheriff Procedural Order 101-19, Prisoner Transportation Rules*, **at 8**.

**Cotton admits that these facts are undisputed and material.**

30.    Deputy Santacasa stated he only used handcuffs if the prisoner became violent or if shackles could not be used, and that the use of handcuffs was rare.  **Exhibit M,** *Deposition of Sheriff Deputy Larry Santacasa*, **Depo Santacasa at 21-28**.

**Cotton admits that these facts are undisputed and material.**

31.     Deputy Gim Yee, who relieved Deputy Santacasa at midnight, stated that he never used handcuffs when guarding an inmate in the hospital in his 34 years as a Sheriff Deputy. **Exhibit N,** *Deposition of Sheriff Deputy Gim Yee*, **Depo Yee at 34-35**. Deputy Yee had specific recollection of Plaintiff and stated Plaintiff was not wearing handcuffs while under Deputy Yee's observation. **Exhibit N,** *Deposition of Sheriff Deputy Gim Yee*, **Depo Yee at 10**. Deputy Yee also stated that Plaintiff's right leg was shackled and a handcuff, if used, would have been applied to his left arm opposite the shackle. **Exhibit N,** *Deposition of Sheriff Deputy Gim Yee*, **Depo Yee at 47-48**.

**Cotton admits that these facts are undisputed and material.**

32.     Both Sheriff Deputies stated that if handcuffs were deemed necessary they would only be used for a short period of time until they could be replaced by leather restraints from hospital security. **Exhibit M,** *Deposition of Sheriff Deputy Larry Santacasa*, **Depo Santacasa at 28; Exhibit N,** *Deposition of Sheriff Deputy Gim Yee*, **Depo Yee at 39-40**.

**Cotton admits that these facts are undisputed and material.**

33.     As of 12:19 p.m. on August 18th, doctors at Mercy noted that Plaintiffs extremities were "[w]ithout cyanosis, clubbing, edema. Pulses are palpable." **Exhibit E,** *Medical Records of Plaintiff, Mercy Hospital, produced by Plaintiff*, **JCotton000108 (critical care consultation regarding respiratory failure)**.

**Cotton admits that these facts are undisputed and material.**

34.     The staff at Mercy noticed that Plaintiffs right hand was cold at 4:45 p.m. when intravenous heparin was ordered. There was no mention of handcuffs in this notation. **Exhibit I,** *Medical Records of Plaintiff, Mercy Hospital, Produced by ACHS, 8/18/09 Admission*, **ACHS Docs 30-31 of 435 (order sheet)**.

**Cotton admits that these facts are undisputed and material.**

35.     Dr. Michael E. Lally, a consulting vascular surgeon, saw Plaintiff at 5:00 p.m. and determined that the problem with Plaintiffs hand should resolve with warm compresses. **Exhibit E,** *Medical Records of Plaintiff, Mercy Hospital, produced by Plaintiff*, **JCotton000105 (consultation for ischemic right hand)**. Dr. Lally's notation indicated Plaintiff was "reportedly" wearing handcuffs. That is first time anyone at Mercy noted handcuffs in the hospital records, and Dr. Lally did not have first-hand knowledge Plaintiff was wearing handcuffs. *Id*.

**Cotton admits that these facts are undisputed and material.**

36.     Later that night, Dr. Lally dictated that the reason for Plaintiff's cold hand "may" have been related to a handcuff. At that point he still expected Plaintiff to recover. **Exhibit E,** *Medical Records of Plaintiff, Mercy Hospital, produced by Plaintiff*, **JCotton000118 (vascular surgery consultation)**. However, Dr. Mendel's expert report indicates that it did not, "appear

that the ER records were reviewed or that consideration of arterial dissection was considered as a result of the radial artery cannulation in the ER." **Exhibit D,** *Mendel Expert Report* **at 4**.

**Cotton admits that these facts are undisputed and material.**

37. Other hospital records mention that Plaintiff "reportedly" or "apparently" had handcuffs on, but no record has a firsthand account that Plaintiff was wearing a handcuff or that the handcuff was the cause of Plaintiff's injury. **Exhibit E,** *Medical Records of Plaintiff, Mercy Hospital, produced by Plaintiff*, **JCotton000116** (plastic surgery consultation with Dr. Gary M. Stofman); **Exhibit E,** *Medical Records of Plaintiff, Mercy Hospital, produced by Plaintiff*, **JCotton000113** (pain service consultation with Dr. Lisa A. Weidner); **JCotton000101** (discharge summary); **Exhibit E,** *Medical Records of Plaintiff, Mercy Hospital, produced by Plaintiff*, **JCotton000001** (letter sent to Plaintiff from Mercy on September 3, 2009).

**Cotton admits that these facts are undisputed and material.**

38. On August 19, 2009, Plaintiff was paroled due to his medical issues and his supervision by Sheriff Deputies was discontinued. **Exhibit O,** *August 19, 2009 Parole Order*, **A0000037**.

**Cotton admits that these facts are undisputed but denies that they are material.**

39. Plaintiff's right hand did not respond as expected to treatment, and after multiple attempts were made to restore blood flow to Plaintiffs fingers, the fingers remained ischemic and progressed to gangrene. Plaintiff was informed that amputation of his fingers may be necessary, but he informed the doctors that he would prefer to have the entire hand amputated. **Exhibit D,** *Mendel Expert Report* **at 4-5**.

**Cotton admits that these facts are undisputed but admits in part and denies in part that they are material. Cotton denies that the fact that, according to the referenced exhibit, Cotton "was informed that amputation of his fingers may be necessary, but he informed the doctors that he would prefer to have the entire hand amputated" is material. Cotton admits that the other facts alleged in paragraph 39 are material.**

40. Plaintiffs hand was amputated on September 3, 2009. **Exhibit E,** *Medical Records of Plaintiff, Mercy Hospital, produced by Plaintiff*, **JCotton000124-000125 (plastic surgery operative report)**.

**Cotton admits that these facts are undisputed and material.**

41. Mercy hospital never made a definitive diagnosis as to what caused the injury to Plaintiff's right wrist. At best, the hospital records establish that the injury could have been

caused by the arterial IV, peripheral vascular disease or the handcuff.  **Exhibit E,** *Medical Records of Plaintiff, Mercy Hospital, produced by Plaintiff*, **JCotton000101** (discharge summary); **Exhibit E,** *Medical Records of Plaintiff, Mercy Hospital, produced by Plaintiff*, **JCotton000118** (Dr. Lally vascular surgery consultation); **Exhibit E,** *Medical Records of Plaintiff, Mercy Hospital, produced by Plaintiff*, **JCotton000001** (letter discussing complications that occurred during stay at Mercy).

**Cotton denies that these facts are undisputed and material.  To the contrary, the letter discussing complications that occurred during Cotton's hospital stay, Exhibit E, JCotton000001, is the only document that can reasonably be considered to represent the diagnosis reached by UPMC Mercy Hospital.  The other referenced documents represent the views of particular individuals.  In addition, Dr. Stofman stated in his affidavit that "handcuffs led to the ischemia in Cotton's right hand."**

42.    Plaintiff has not produced any other evidence to establish that the handcuff was the cause of the injury that resulted in the gangrenous changes to Plaintiffs fingers and ultimate amputation.

**Cotton denies that this fact is undisputed and material.**

43.    Dr. Lawrence Mendel's expert report attributes the injury that lead to the gangrenous changes to Plaintiffs fingers to a vascular injury to Plaintiffs radial artery that occurred when the IV was erroneously inserted into the artery during the initial Emergency Department treatment.  Dr. Mendel does not believe the injury was related to the use of handcuffs.  **Exhibit D,** *Mendel Expert Report* **at 6**.

**Cotton admits that this fact is undisputed but denies that it is material.  The opinions of an expert are not themselves material fact.**

        II.       ADDITIONAL MATERIAL FACTS ALLEGED BY COTTON

44.    From July 16, 2008 to August 19, 2009, Cotton was an inmate of the Jail serving a penal sentence following conviction of crime.  County's Statement, Exhibit A, Dkt. # 84-3, Allegheny County Inmate Commitment Summary Report; County's Statement, Exhibit O, Dkt. # 84-17, Parole Order.

45. When ACHS received the laboratory results from Cotton's February 10-11, 2009 blood test, no member of ACHS' staff ever provided Cotton with the results of his blood test. Motion for Summary Judgment filed by ACHS, Dkt. # 88, ¶ 15; Brief in Support of Motion for Summary Judgment filed by ACHS, Dkt. # 89, ¶¶ 19, 20, 22, 26; Deposition of James Cotton, Exhibit to Brief in Support of Motion for Summary Judgment filed by ACHS, Dkt. # 89-5, at 13, 44-47.

46. There is no evidence that ACHS performed further blood testing on Cotton between the blood sample analysis on February 10-11, 2009 and Cotton's emergency on August 18, 2009. *See* Motion for Summary Judgment filed by ACHS, Dkt. # 88, ¶ 15; Brief in Support of Motion for Summary Judgment filed by ACHS, Dkt. # 89, ¶¶ 19, 20, 22, 26; Deposition of James Cotton, Exhibit to Brief in Support of Motion for Summary Judgment filed by ACHS, Dkt. # 89-5, at 13, 44-47.

47. There is no evidence that ACHS advised Cotton of the possibility that he was developing diabetes. *See* Motion for Summary Judgment filed by ACHS, Dkt. # 88, ¶ 15; Brief in Support of Motion for Summary Judgment filed by ACHS, Dkt. # 89, ¶¶ 19, 20, 22, 26; Deposition of James Cotton, Exhibit to Brief in Support of Motion for Summary Judgment filed by ACHS, Dkt. # 89-5, at 13, 44-47.

48. According to hospital records, personnel at UPMC Mercy Hospital staff were aware that Cotton had a "cold hand" at 4:00 pm on August 18, 2009 and placed warm compresses at 4:10 pm on August 18, 2009. Exhibit A, Physician/Provider Communication, Bates no. 01455.

49. At his deposition, Robert Bytner stated that he did not remember his interaction with Cotton. *See* County's Statement, Exhibit H, Dkt. # 84-10, Deposition of Robert Bytner, at 18-19.

50. In his affidavit, Dr. Guy M. Stofman ("Dr. Stofman") stated that he had treated Cotton, including performing two surgeries. Exhibit B, Affidavit of Dr. Guy M. Stofman.

51. In his affidavit, Dr. Stofman stated that, on August 25, 2009, he "was informed that Mr. Cotton had been handcuffed and that the handcuffs had caused his hand to become pale and cool." Exhibit B, Affidavit of Dr. Guy M. Stofman, ¶¶ 6-7.

52. In his affidavit, Dr. Stofman stated, "Based on information learned during my treatment of Mr. Cotton, handcuffs led to the ischemia in Cotton's right hand." Exhibit B, Affidavit of Dr. Guy M. Stofman, ¶¶ 16.

Dated: May 24, 2013

Respectfully submitted,

/s/Victor Abraham Delnore
Mark A. Rush
Pa. I.D. No. 49661
mark.rush@klgates.com
Katherine M. Gafner
Pa. I.D. No. 311469
kate.gafner@klgates.com
Victor Abraham Delnore
Pa.I.D. No. 309852
abe.delnore@klgates.com

K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA  15222-2613
412.355.6500 (tel)
412.355.6501 (fax)

*Counsel for plaintiff James Cotton*

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, making it accessible to all counsel of record.

/s/Victor Abraham Delnore
Victor Abraham Delnore